Leila McCampbell *et al.*

*v.*

Henry B. Mason.

*Filed at Ottawa, June 19, 1894.*

1. DECREE—*whether binding on one not a party to the suit.* The general rule that a decree is not binding on one not made a party to the suit, is subject to certain well recognized exceptions. Thus, when a party is before the court by representation, and in such a way that his interest must be deemed to have been as fully and effectually presented and protected as it would have been if he had been personally present, his rights will be concluded by the decree. Upon this principle it has been frequently held that where the owner of the vested estate is before the court, the interests of a contingent remainderman will be bound, although he may not be formally made a party.

2. A party made a deed by which he granted an estate for life, after his death, to his four children, and to their issue or heirs of their bodies in fee, such issue to take *per stirpes*, subject to the proviso that if either of the grantees of the life estate should die without issue, the remainder, after the life estate of the grantor dying, should go to the surviving grantees for life, with remainder in fee to their issue or heirs of their bodies. If all the issue of a grantee should die in his or her lifetime, the remainder was to go, upon his death, not to the heirs at law of his or her deceased child or children, but to the surviving grantees for life, with remainder in fee to the issue or heirs of their bodies. After bill to foreclose a mortgage, and before final decree therein, one of the grantees had six children born, all of whom, except the youngest, were made parties, and a decree of foreclosure was entered: *Held,* that the decree was conclusive on all the children of such grantee, including the one not made a party.

3. REMAINDER—*whether contingent—deed construed.* Where a deed grants an estate for life after the grantor's death, to his four children, and to their issue, or to the heirs of their bodies in fee, the issue or heirs of their bodies to take *per stirpes,* but the grant is subject to the proviso that if either of the grantees shall die without issue or heirs of his or her body, the remainder, after the life estate of the grantee dying, shall go to the surviving grantees for life, with remainder in fee to the issue or heirs of their bodies, the interest acquired by the grandchildren, under such deed, will be contingent. The persons who are to take the remainder, on the death of either of the life tenants, are left dubious and uncertain, so that until such death it is impossible to ascertain the persons to whom the remainder will go.

4. SAME—*in fee—limited after a fee.* A remainder in fee may be limited after a fee by will by way of an executory devise, but it can not be done by deed.

5. BURNT RECORDS ACT—*establishing title against a contingent interest.* The provisions of the Burnt Records Act are broad enough to authorize the court to determine and establish a title even as against a party holding or claiming a contingent interest, especially where the cloud on the petitioner's title grows out of the provisions of a deed made before the destruction of the records.

APPEAL from the Circuit Court of Cook County; the Hon. THOS. G. WINDES, Judge, presiding.

Mr. HUGH L. MASON, for the appellants:

The principle of law is well settled that the equity of redemption, which one has, is not barred by foreclosure proceedings, to which he is not a party. *Kelgour* v. *Ward,* 64 id. 345; *Taylor* v. *Adams,* 115 id. 570.

As to the doctrine of representation, see Story's Eq. Pl., sec. 126; Jones on Mortgages, sec. 1406; *Ohling* v. *Luitjens,* 32 Ill. 23; *Bradley* v. *Snyder,* 14 id. 263; *Dunlap* v. *Wilson,* 32 id. 517; *Leggett* v. *Mut. L. Ins. Co.,* 64 Barb. 23.

The United States Court never acquired jurisdiction over Leila McCampbell. *Long* v. *Thompson,* 60 Ill. 27; *Thomas* v. *People,* 107 Ill. 517.

A reservation in the *habendum* of a deed which is repugnant to the grant, is void. 2 Wash. on Real Property (2d

Ed.), 687; *Bradley* v. *Puxeto*, 3 Vesey, Jr., 324; *Ives* v. *Van Anken*, 34 Barb. 566; *McCleary* v., *Ellis*, 54 Iowa, 311; *Ingram* v. *Porter*, 4 McCord, 198; *Riggin* v. *Love*, 72 Ill. 553.

The defect in title sought to be cured by this proceeding having occurred since the destruction of the records, appellee is not entitled to any remedy under the provisions of the Burnt Records Act.

Messrs. WILSON, MOORE & McILVAINE, for the appellee:

The rule is uniform in this State, that the findings of a decree in chancery are presumed to be correct, and can only be overcome by the complete record, showing that they are not justified by the evidence. *Groenendyke* v. *Coffeen*, 109 Ill. 325; *McIntosh* v. *Saunders*, 68 id. 128; *Mauck* v. *Mauck*, 54 id. 281.

The interest of the appellants was contingent and uncertain, and hence they were not necessary parties to the foreclosure suit, but were bound and concluded thereby whether in court or not.

As to the interest of the remainder-men under the deed, see *Bates* v. *Gillette*, 132 Ill. 287; *Lehndorf* v. *Cope*, 122 id. 317; *Ebey* v. *Adams*, 135 id. 80; *Adams* v. *Law*, 17 How. 417; *King* v. *Savage*, 121 Mass. 303; *Schaefer* v. *Schaefer*, 141 Ill. 341; *Hall* v. *Hall*, 140 Mass. 267; *Walton* v. *Follansbee*, 131 Ill. 147; *Haward* v. *Peavey*, 128 id. 430.

Contingent remainder-men are not necessary parties. *Faulkner* v. *Davis*, 18 Gratt. 651; *Bofil* v. *Fisher*, 3 Rich. Eq. 1; *Mead* v. *Mitchell* 17 N. Y. 210; 1 Harrisons' Chancery, 85; Cooper's Eq. Pl. 36.

As to the foreclosure suit, although not necessary parties having no right of redemption, they were proper parties, having by their *status* a presumptive right, which might ripen into a title, or an interest therein.

"A person having only a remote or contingent interest, without any estate or lien, may properly be made a party" in a foreclosure case. 2 Jones on Mortgages, sec. 1,400; *Johnson* v. *Britton*, 23 Ind. 105; *Parrott* v. *Hughes*, 10 Iowa, 459.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a petition under the Burnt Record Act, brought by Henry B. Mason, to establish and confirm his title to lots 6 and 7, in Assessor's Division of lots 4 and 5, of block 36, in the original town of Chicago. By his petition, the petitioner claims title to the lots in fee, subject to the incumbrance of two deeds of trust executed by the petitioner and wife and James L. Houghteling and wife, one dated November 1, 1888, and given to secure Mason and Houghteling's promissory note for $175,000, and the other dated April 23, 1889, and given to secure their note for $50,000.

It appears from the pleadings and proofs, that on the 28th day of August, 1866, James M. Bryant, who was then the owner in fee of the premises by *mesne* conveyances from the United States, executed, acknowledged and delivered to James L. Bryant, Leila Bryant, Sallie L. Bryant and Pattie B. Bryant, the grantor's children, a deed by which, in consideration of natural love and affection, and the further consideration of $10, to him in hand paid, he granted, bargained and sold the premises in question to the grantees above named, "together with all and singular the hereditaments and appurtenances thereunto belonging or in any way appertaining, and the rents, issues and profits thereof, and all the estate, right, title, interest, claim or demand whatsoever, of the said party of the first part, either in law or in equity, of, in and to the above bargained premises, with the hereditaments and appurtenances, after the death of the said party of the first part. To have and to hold to the said parties of the second part, after the death of the said party of the first part, for and during the

lives respectively of said parties of the second part, and to the issue, or heirs of the bodies respectively, of said parties of the second part in fee simple, said issue or heirs of the bodies of said parties of the second part taking *per stirpes*: Provided, that if any one or more of the said parties of the second part shall die without leaving issue, or heirs of his, her or their bodies, then his, her or their portion or portions are to survive and go to and be held by the surviving party or parties of the second part respectively for life or lives, and then to the issue, or heirs of the body of such survivor or survivors in fee simple; and, provided, further, that if all of said parties of the second part shall die without leaving issue or heirs of their bodies, then each and all of said parcels of land or lots shall revert to the heirs of the said party of the first part; provided, also, and it is hereby understood and agreed, that the said party of the first part reserves the right and the power to charge each and any or all of said lots or parcels of land by mortgages or trust deeds, conveying the fee simple title thereof for moneys raised or to be raised, loaned or borrowed thereon for the purpose of improving or adding to the house or houses now upon any one or more or all of said parcels of land or lots, or erecting upon any one or more or all of said lots any new building or buildings, whenever in his opinion the same may be necessary or proper, by reason of injury or destruction of any house or houses now on said lots or any of them by fire or other casualty or ordinary wear and tear, from use and occupation or time; said improvements, if made, being for the benefit of those entitled or to be hereafter entitled to said lots, and it being right and proper to charge the whole estate in fee simple, with the moneys to be raised for such improvements, and it is further understood, provided and agreed that no person or persons who make a loan or loans on such mortgages or trust deeds shall be required to look to the application of such moneys."

The buildings on these lots having been destroyed by the great fire of 1871, James M. Bryant and wife, he having been a widower at the date of the execution of the deed above described and having now re-married, executed a mortgage on the premises to the United States Mortgage Company, dated October 1, 1872, to secure a loan of $53,000, the money being borrowed for the purpose of erecting new buildings on the lots, and subsequently, on October 1, 1876, Leila Bryant and others executed a mortgage on the premises to the same mortgagee, to secure a further loan of $12,000.

On the 14th day of November, 1877, the United States Mortgage Company filed its bill in the Circuit Court of the United States for the Northern District of Illinois for the foreclosure of these two mortgages. At that time, James L. Bryant, one of the grantees in the deed of August 28, 1866, had died without issue. Leila Bryant was then and is still unmarried and without issue. Pattie B. Bryant was then unmarried, but has since intermarried with E. S. Rowland, and is without issue. At the time of the commencement of the foreclosure proceedings, Sallie L. Bryant had intermarried with Amos G. McCampbell, and at that time she had no children, but during the progress of the foreclosure proceedings she had six children, viz.: Roberta, Bryant, Georgia, Leavill, Amos and Leila, all of whom are still living.

To the foreclosure bill, James M. Bryant and Roberta S. Bryant, his wife, Leila Bryant, Pattie B. Bryant, Sallie L. McCampbell and Amos G. McCampbell, her husband, were made parties defendant. During the progress of the proceedings, all the children of Sallie L. McCampbell, with the exception of Leila, were made defendants, and a guardian *ad litem* was duly appointed for them, who duly answered in their behalf, and a cross-bill was thereupon filed for them and in their names. Leila McCampbell, who

was not made a party, as the evidence tends to show, was born February 25, 1885.

On the 24th day of May, 1887, a final decree was rendered in the foreclosure proceedings, finding that the two mortgages, and each of them, at the time they were executed, were valid liens on the premises therein described, and dismissing the cross-bill filed by and on behalf of the five children of Sallie L. McCampbell for want of equity. The court further found that, at the date of the decree, there was due the complainant upon the mortgage dated October 1, 1872, the sum of $106,348, but that nothing then remained due on the other mortgage. It was thereupon ordered and decreed, in the usual form, that the mortgaged premises be sold by the master for the amount thus found to be due on the mortgage of October 1, 1872, interest and costs, and that if the mortgaged premises should not be redeemed from the sale within fifteen months as provided by law, the defendants to the bill, and all persons holding or claiming under them or any of them since the commencement of the suit, stand forever barred and foreclosed of all rights and equity of redemption in and to the premises sold, or any part thereof. In pursuance of this decree, the mortgaged premises were sold by the master, the Mortgage Company becoming the purchaser and receiving the usual certificate of purchase. The certificate was afterwards sold and assigned by the Mortgage Company to James L. Houghteling and Henry B. Mason, and the premises not having been redeemed from the sale as provided by law, a master's deed was issued to them. Mason subsequently acquired the title vested in Houghteling by the master's deed

In the present proceeding, all parties in interest, including the six grand-children of James M. Bryant, were made parties defendant, and the cause being heard on pleadings and proofs, a decree was rendered finding all the material allegations of the petition to be true, and, among other

things, finding that, in the foreclosure proceedings, all the grand-children of James M. Bryant were made parties and were duly served with process, except Leila McCampbell, who was not personally served with process therein, and who was born after the commencement of the proceeding and after all the original defendants had been duly brought into court; but the court found that she was, nevertheless, duly bound and concluded by the decree of foreclosure, and further, that she was duly represented therein by the other grand-children of James M. Bryant. The court further found that the petitioner, at the time of filing his petition was and still is in the exclusive possession of the premises in question and the owner thereof in fee, and it was ordered and decreed that his title be established and confirmed, free from any interests, claims or demands of the defendants or any of them, or any person or persons claiming by, through or under them, or any of them, since the filing of his petition. From this decree the six grand-children of James M. Bryant, by their guardian *ad litem,* have appealed to this court.

The propriety of the decree thus brought here for review depends primarily, if not wholly, upon the effect to be given to the decree of the Circuit Court of the United States in the foreclosure suit. That the foreclosure decree is binding and conclusive upon the rights of the five grandchildren who were made parties and were served with process does not seem to be questioned, and, consequently, no argument is made here in their behalf.

But on behalf of Leila McCampbell, counsel have presented their brief and argument, and their first, and indeed their principal contention is, that, as she was not made a party to the foreclosure suit or served with process therein, her equity of redemption is not barred and her rights are in no way affected by the decree in that proceeding. The foreclosure suit seems to have been pending nearly ten years, and during that period all the grand-children were

born. When the bill was filed, all parties in being who had any interest in the subject-matter of the litigation or whose rights could be affected by the decree were made parties. Subsequently, five grand-children having been born, the proceedings were so amended as to make them parties defendant, and they were duly served with process. Leila McCampbell was born after the bill had been filed nearly eight years, and no steps seem to have been taken to make her a party or bring her before the court.

It is doubtless the general rule, that, in proceedings in equity, the interests of parties not before the court will not be affected by the decree. But this rule is subject to certain well recognized exceptions. Thus, where a party is before the court by representation, and in such way that his interests must be deemed to have been as fully and effectually presented and protected as they would have been if he had been personally present, his rights will be concluded. Upon this principle it has been frequently held that, where the owner of the vested estate is before the court, the interests of a contingent remainder-man will be bound, although he may not be formally made a party. In *Temple* v. *Scott*, 143 Ill. 290, a bill was filed to set aside a deed creating a trust for a married woman for life, with remainder to such of her children as might survive her, and it was held that the children took only a contingent interest, and that although they were not made parties to the suit, the decree setting aside the deed of trust was binding on them, their contingent interest being represented by the trustee. In *Townshend* v. *Frommer*, 125 N. Y. 446, the same rule was applied to parties entitled to a contingent estate, in a bill to foreclose a mortgage.

We are of the opinion that the interest acquired by the grand-children of James M. Bryant under the deed of August 28, 1866, was contingent, and that at the date of the decree in the foreclosure suit, it had not become vested. It should be remembered that at the date of the deed, none

of the four children of the grantor named in the deed as grantees had married, and that there were then no grandchildren. The deed granted an estate for life, after the grantor's death, to the four grantees, and to their issue or to the heirs of their bodies in fee, the issue or heirs of their bodies to take *per stirpes.* But the grant was subject to the proviso that, if either of the grantees should die without issue or heirs of his or her body, the remainder, after the life estate of the grantee dying, should go to the surviving grantees for life, with remainder in fee to the issue or heirs of their bodies. The devolution of the estate, on the death of a grantee, then, was not made to depend upon whether such grantee should have had issue in whom the estate in remainder had become vested, but upon whether such issue should be living at the date of his or her decease. If the intention of the grantor, as expressed in the deed, was, that upon the birth of a particular grand-child, the estate in remainder was to become vested in him or her, it would seem to be the necessary result that, upon the death of such grand-child, even though it should take place before the termination of the particular estate, the remainder would go by descent to his or her heirs at law. But by the terms of the deed, if all the issue of a grantee should die in his or her lifetime, the remainder was to go, upon his death, not to the heirs at law of his or her deceased child or children, which would be the case if the remainder was vested, but to the surviving grantees for life, with remainder in fee to the issue or heirs or their bodies. If then the remainder in fee to the issue or heirs of the bodies of the grantees was intended to be a vested remainder, the proviso attempts to limit a remainder in fee after a fee, a thing which may be done by will by way of an executory devise, but which can not be done by deed. This construction of the deed would have the necessary effect of rendering at least the proviso void as an attempt to limit a remainder in fee after a fee, and it should not be adopted

if any other reasonable construction remains which would give effect to all the provisions of the instrument. Such construction, we think, is plain, viz., that the persons who were to take the remainder on the death of either of the life tenants was left dubious and uncertain, so that until such death, it is impossible to ascertain the persons to whom the remainder will go. If at the death of a life tenant, he or she has issue or heirs of his or her body surviving, it goes to such issue, but if not, it goes to the surviving life tenants for their lives, with remainder in fee to their issue or the heirs of their bodies. It thus seems to be plain that the remainder granted to the grantor's grand-children, so long as the parent is surviving, is contingent, and that it could only become vested upon the death of the parent leaving surviving children or descendants.

But even if this were otherwise, it is perfectly clear that, at the time the foreclosure suit was commenced, the remainder now vested in the children of Sallie L. McCampbell was contingent, as none of the persons to whom the remainder was to go were then in existence. All the tenants of the particular estate, and also the grantor in the deed, in whom, if in anybody, the fee remained, prior to the birth of the tenants in remainder, were made parties defendant. These, at that time, comprised all parties in being having any interest in the estate. After five of the children of Sallie L. McCampbell had been born, they also were made parties defendant. If the remainder was vested, the entire remainder after the life estate of their mother was vested in them, liable, it is true, to open and let in after-born children. But after the five children were made parties, again, all persons in being having any interest in the mortgaged premises were before the court. And even after her birth, the remainder which then became vested in Leila McCampbell was only a part of the same interest theretofore vested in her brothers and sisters, and through them before the court and subject to its jurisdiction. There-

after, and down to the date of the decree, the interests re-
maining vested in her brothers and sisters were precisely
identical in character with hers. The defenses made by
them were equally available in her behalf, and if a decree
had been entered in their favor, it would have enured to
her benefit.

It will thus be seen that, in every point of view, she was
fully represented in the foreclosure suit, and in such way
as to give her interests efficient and complete protection, to
precisely the same extent as though she had been formally
made a party. Under these circumstances, we think she
was clearly made a party by representation, so as to be
bound by the decree to the same extent as were the others
who defended in the same right. For a further discussion
of the doctrine of representation, and its application to cases
of this character, see *Hale* v. *Hale,* 146 Ill. 227.

The next point made by the appellant is, that the power
to mortgage tne fee reserved or attempted to be reserved
in the deed of August 28, 1866, is void, because repugnant
to the grant contained in the deed, and that Leila McCamp-
bell's rights were not affected by the execution of the mort-
gage in pursuance of such supposed power. Without paus-
ing to examine the deed for the purpose of determining ·
whether this point would be tenable if it were presented
here as an original proposition, it is sufficient to say, that
the same contention was made in the United States Circuit
Court in the foreclosure proceeding, and that it was ex-
pressly adjudicated by that court that both the power to
mortgage and the mortgage executed in pursuance of it
were valid. As the decree of that court is binding upon the
appellants here, including Leila McCampbell, they can not
now be heard to question its correctness.

The appellants also insist that, as Leila McCampbell's
interest is uncertain, and its possession and enjoyment con-
ditional upon her survivorship after the death of her
mother, her rights can not be properly litigated in this

suit; and also, that as the defect of title sought to be cured has arisen since the destruction of the records by the great fire of October, 1871, such defect can not be cured by a proceeding under the Burnt Record Act. Both of these propositions, as we think, must be decided in the negative. The provisions of the Burnt Record Act seem to be sufficiently broad to authorize the court to determine and establish a title, even as against a party holding or claiming a contingent interest. And it seems clear that the apparent defect in or cloud upon the petitioner's title, arising from the claim made on behalf of Leila McCampbell, grows out of the provisions of the deed of August 28, 1866, and not out of any matter affecting the title which has occurred since the destruction of the records.

In our opinion, none of the contentions made on behalf of the appellants can be sustained, and the decree of the Circuit Court will, therefore, be affirmed.

*Judgment affirmed.*