MARY LOUISE WYMAN *v.* CHARLES C. KINNEY ET AL.

Special Term at Rutland, November, 1939.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed January 2, 1940.

96

*Vernon J. Loveland* and *Hanford G. Davis* for defendants Mary Fallon, Hilda MacNaughton and Osmyn F. Kinney.

*James Batchelder Campbell* for the petitioner.

JEFFORDS, J.  This is an action to foreclose three mortgages, each of which covered the same lands and premises.  There were nine named defendants and only three of them, Osmyn F. Kinney, Hilda MacNaughton and Mary Fallon appeared and an-

swered. The other named defendants were Charles C. Kinney, Charles C. Kinney, Jr., Nellie M. Dyer, Heman J. Dyer and the Factory Point National Bank. The case was heard on the bill and answer and upon the pleadings the chancellor found certain facts which so far as material are in substance as follows:

Mary Felt deceased in July, 1901, seized and possessed of the lands and premises covered by the mortgages sought to beforeclosed. She left surviving her husband Osmyn and three children, Nellie M. Dyer, wife of Heman J. Dyer, Libbie F. Kinney, wife of Charles C. Kinney, and Hattie F. Bryant.

Mary died testate. By the terms of her will she disposed of her property as follows:

> "I give, devise, and bequeath to my husband Osmyn George Felt all my real estate and personal estate whatsoever and wheresoever during his natural life for his use and benefit, and after his decease I give and devise the same to my three daughters, Hattie, Libbie and Nellie to be equally divided among them, or their heirs."

Subsequent to the death of the testatrix her husband occupied and possessed the land and premises here in litigation until the time of his death, which was on February 26, 1938.

Osmyn G. Felt, Libbie F. Kinney and Charles C. Kinney, her husband, Nellie M. Dyer and Heman J. Dyer, her husband, and Hattie F. Bryant on March 5, 1923, all joined in the execution of a mortgage to E. L. Wyman of premises devised by the will. On February 9, 1926, the same mortgagors with the exception of Charles C. Kinney gave another mortgage of the same premises to Wyman. On August 13, 1926, the same mortgagors as in the first mortgage before mentioned gave a third mortgage of the same premises to Wyman. On February 23, 1928, the same parties with the exception of Hattie gave a mortgage of the premises to the Factory Point National Bank.

E. L. Wyman died September 27, 1934, and the first three mortgages above referred to came by assignment to the plaintiff.

Libbie F. Kinney died intestate on April 30, 1929, leaving surviving her husband, Charles C. Kinney, and four children, Osmyn F. Kinney, Hilda MacNaughton, Mary Fallon and Charles C. Kinney, Jr., all named defendants in this case.

Hattie F. Bryant died intestate on May 17, 1936, leaving as heirs said Nellie M. Dyer, Osmyn F. Kinney, Hilda, Mary and Charles, Jr.

It was found by the chancellor that whatever rights the defendant bank may have in the premises here involved they are subject to the rights of the plaintiff.

It was also found by the chancellor that:

> "The interests of Nellie M. Dyer, Libbie F. Kinney and Hattie F. Bryant in the property here in question became vested immediately upon the death of their mother, Mary Felt.
>
> "Since Nellie M. Dyer, Libbie F. Kinney and Hattie F. Bryant, as well as their father, Osmyn G. Felt, who had a life estate in the property, all joined in executing the mortgages and notes now owned by the petitioner, the mortgages which secure the payment of the notes are a first lien on the property and the interests of the defendants are subject to the petitioner's mortgages. The petitioner is therefore entitled in equity to a decree of foreclosure."

The defendants Osmyn, Hilda and Mary excepted to the two above quoted findings on many grounds. The only ones relied upon however in their brief are in effect that said findings construe the will in a manner contrary to the intent of the testatrix and contrary to law because the bill and answer clearly indicate that the interests of Nellie, Libbie and Hattie in the property did not vest in them upon the death of the testatrix, or if they did then vest they were divested as to Libbie and Hattie by their deaths prior to the death of the life tenant.

The chancellor entered a decree of foreclosure against all the named defendants and the defendants Osmyn, Hilda and Mary upon permission duly had appealed from this decree.

[1-6] The only question for determination in this case is as to the nature of the estates which the three named daughters took under the will. Were they absolute vested remainders as claimed by the plaintiff or were they contingent remainders or at the most vested, subject to divestment, as claimed by the defendants? In order to answer this question it is necessary to

ascertain the intention of the testatrix in this respect for in construing wills the intention of the testator, so far as it may legally be carried out, when ascertained, will control. *Crossman* v. *Crossman's Estate,* 100 Vt. 407, 411, 138 Atl. 730; *In re Mansur's Will,* 98 Vt. 296, 298, 127 Atl. 297; *In re Robinson's Estate,* 90 Vt. 328, 332, 98 Atl. 826. When that intention, if lawful, is once ascertained, it is the duty of the court to declare and enforce it. *Crossman* v. *Crossman's Estate, supra.* Such intention is to be ascertained by referring to the language employed and the associated circumstances. *In re Carter's Will,* 99 Vt. 480, 487, 134 Atl. 581, 61 A. L. R. 1005. To aid in ascertaining this fact certain well recognized rules have been established among which are the following: The law favors the early vesting of devised estates and it presumes that words of survivorship relate to the death of the testator, if fairly capable of such construction; and that no estate will be held contingent unless positive terms are employed in the will indicating such intention. But when the language employed by the testator annexes futurity to the substance of the devise which clearly indicates the intention of the testator to limit it to take effect upon a dubious and uncertain event, the interest is contingent. In such case the vesting of the devise is suspended until the time of the happening of the event. *In re Beach's Estate,* 103 Vt. 70, 81, 151 Atl. 654, and cases cited therein.

In order to hold that the three named daughters took absolute vested remainders it seems necessary to give to the word "or", appearing in that part of the will in question, the meaning of "and". This is virtually conceded by the plaintiff in her brief. She claims that in a majority of the cases similar to the one here the courts have construed "or" as "and". She says the reason for this is that the word "heirs" is one of limitation and not of purchase.

The words "heir" or "heirs" are technically words of limitation, but they are used as words of purchase and always have that operation when it sufficiently appears that the term is used to designate a particular person or persons who may stand in that relation at the happening of a certain event, or at a certain period, and not to the whole line of heirs in succession. *Ebey* v. *Adams,* 135 Ill. 80, 25 N. E. 1013, 10 L. R. A. 162. See, also, to the same effect *Blake and wife* v. *Stone et al.,* 27 Vt. 475, 477.

100

The plaintiff cites the annotation appearing in 48 Am. Dec. 570 as authority for her statement that a majority of the courts have construed ''or'' as ''and'' in cases similar to the one here. The court in *Taylor* v. *Taylor,* 118 Iowa 107, 92 N. W. 71, in the course of its opinion says:

> ''To treat 'or' as 'and' in construing the will would render the whole clause meaningless, as without it the fee would have passed to the children. (Citing code sec.) But we are not permitted to reject clauses, nor arbitrarily to substitute one word for another. This can only be done when imperatively demanded in order to carry out intentions of the testator. * * * No doubt there are decisions holding that in a devise to one or his heirs, issue, or the like, whatever the form of expression, the word 'or' should be construed as 'and.' See cases collected in note to *Janny* v. *Sprigg*, 48 Am. Dec. 570. On this subject Judge Redfield in his work on Wills, says: 'There is also a class of cases, somewhat numerous, where the word 'or' is interposed between the names of the first legatee or devisee and the heirs of such person,—as to A or his heirs, forever or in tail—in regard to which there has been considerable discussion, and where there does not seem to be perfect coincidence. Some of the earlier cases where this occurs incline to treat the variation from the usual form of creating such limitations as merely accidental, and as not being intended to create any different estates. The cases where the word 'or' being interposed between the name of the first devisee or legatee and his heirs has been held to indicate the intention of substituting the latter in place of the ancestor are numerous, and, being more recent, as a general thing, and more in consonance with the words used, must be regarded as defining the most reliable rule. 1 Redf. Wills, 486.' ''

In *Fisher* v. *Barcus*, 14 Del. Ch. 324, 127 Atl. 53, 55, it is said:

> ''Whatever may have been the rule formerly, the weight of authority now is that a gift after a life estate to 'A or his heirs' creates a substitutionary

right in the heirs, who in case of A's death before the period of payment take in their own right as substitutes in place of A in whom no transmissible and indefeasible interest had vested."

"No one can have heirs while living. The word 'or,' therefore, as here used, indicates substitution."
*Ebey* v. *Adams, supra.*

For other cases giving a similar meaning to the word "or" see *Union Safe Deposit & Trust Co.* v. *Wooster,* 125 Me. 22, 130 Atl. 433; *Potter* v. *Potter,* 306 Ill. 37, 137 N. E. 425; *Levings* v. *Wood,* 339 Ill. 11, 170 N. E. 767; *In re Evan's Will,* 234 N. Y. 42, 136 N. E. 233; *Waxson Realty Corp.* v. *Rothschild,* 255 N. Y. 332, 174 N. E. 700; *Delaware County Trust Co.* v. *Hanby,* 19 Del. Ch. 228, 165 Atl. 568.

In this case the intention of the testatrix as to the meaning to be given to the word "or" must be determined from the wording of one sentence of the will. There is nothing in this case which clearly shows an intention to use this word in other than its usual and legal sense and consequently it will be presumed that it was so used. *In re Carter's Will, supra.* See also *Rice* v. *Bennington County Savings Bank,* 93 Vt. 493, 503, 108 Atl. 708.

Having determined that the testatrix intended to use "or" in its usual disjunctive sense of substitution our next inquiry is as to the nature of the estates she intended to create in the named children and heirs by the use of said word.

In *Ebey* v. *Adams, supra,* an estate was devised to A for life with certain directions as to payment upon her death, the residue to be distributed among children of testator or their heirs. One child conveyed her share and died before A. It was held that during the life of A such child had merely a contingent remainder. After stating, as heretofore noted, that the word "heirs" is used as a word of purchase and that the word "or" indicates substitution the court says:

"It would seem clear, therefore, that the persons who are to take are such of the children as might be living at the time of the distribution, and the heirs of such as might have predeceased. It fol-

lows, when this language is considered in connection with the context, that there was here created an alternative devise. Such of the children as were living at the time of distribution, would take, and such persons as would fall under the designation of 'heirs' of such as had predeceased would take the share or portion that their ancestor would have taken if living. The vesting of the estate in interest, as well as in possession, in the children of the testator, depended upon their surviving the day of distribution. In other words, time is of the substance of the gift, and related to the vesting of the legacies in interest, as well as in possession."

In *Taylor* v. *Taylor, supra,* there was a devise to wife of testator during her life or widowhood and at her decease or marriage to be equally divided among children of testator or their heirs. It was held that during the life of the life tenant the children had merely contingent remainders. Here, as before noted, the court refused to construe "or" as "and". The cases cited and quoted from in this opinion are similar in principle to our case.

For other cases which hold that when a substitutionary intention is manifested on the part of the testator either by the use of the word "or" or by other language in the will which calls for that construction contingent remainders are created see *Bowen* v. *Hackney,* 136 N. C. 187, 48 S. E. 633, 67 L. R. A. 440; *Whitesides* v. *Cooper,* 115 N. C. 570, 20 S. E. 295; *Furnish* v. *Rogers,* 154 Ill. 569, 39 N. E. 989; *Golladay* v. *Knock,* 235 Ill. 412, 85 N. E. 649, 126 Am. St. Rep. 229; *Stump* v. *Findlay,* 2 Rawle (Pa.) 168, 19 Am. Dec. 632; *Schapiro* v. *Howard,* 13 Md. 360, 78 Atl. 58, 140 Am. St. Rep. 414. In these cases it was held that alternative contingent remainders were created dependent upon a contingency with a double aspect. By analogy, we have the same kind of remainders in the instant case.

From our examination of the matter it seems clear that the testatrix intended to impose the condition that the named children be living at the death of the life tenant in order that their estates vest in them, in interest as well as possession and that otherwise the heirs of such as may have deceased prior to that time would take in possession what their ancestors would

have taken if they had survived the life tenant. In other words, it must be considered that the testatrix intended to create as to the named children contingent and not vested remainders for when a condition of survivorship of the life tenant is imposed, the remainder thus created is one of contingency. See generally cases from other jurisdictions, *supra*, and also *Blanchard* v. *Blanchard*, 1 Allen (Mass.) 223, and 23 R. C. L. 542, sec. 86. This is so because in such a case time is of the substance of the devise and the event upon which it is limited to take effect, the survivorship of one over another, is always an uncertain and dubious event.

The instant case as we construe it is similar to that of *In re Field's Estate*, 101 Vt. 242, 143 Atl. 280, except that in the latter case the remainder in question was to a class, but the same principle applies to both. In that case an estate was devised to A for life and at her decease to her children if living, otherwise to the grandchildren of the testator share and share alike. It was there held that there were created by the will alternative contingent remainders in the double aspect. That the same contingency decided which of the two remainders should take effect in possession, the contingency being the life tenant having children living at her decease, a dubious and uncertain event which might or might not happen. From the language used the Court held that it was clear the testator intended that the remainders over should be contingent on the life tenant leaving children living at her decease and the alternative remainder should not vest in interest until the happening of the contingency and then proceeded to carry out this intention.

In the *Field* case it appears that the life tenant had two children, Egbert and Walter, both of whom survived the testator, That Walter deceased prior to the death of the life tenant and that Vincent, the son of Walter, after his father's death conveyed his interest in the estate to B. At the death of the life tenant Egbert was living. It was held that as the first alternative remainder was to a class, Egbert, being the only person of the class living at the time of the happening of the contingency, took the whole estate. The effect of this holding was to make of no value the deed from Vincent to B.

The plaintiff says that no intention to postpone the vesting can be gathered from the use of the words "and after his

decease I give and bequeath'' etc. She cites authorities to the effect that words or phrases of futurity such as ''when'', ''then'' and ''from and after'' when used in a devise of a remainder after a life estate are construed to relate to the time of enjoyment of the estate, and not to the time of its vesting. She cites *In re Robinson's Estate, supra,* wherein it was held that the words ''after the death of'' referring to the life tenant was not enough to indicate an intention to postpone the gift itself but was consistent with an intention to postpone possession alone. We agree with that statement of the law but the situation is changed here by the use also of the word ''or'', as we have already seen. In *Union Safe Deposit & Trust Co.* v. *Wooster, supra,* the gift was to A for life, ''then to become the property of my children or their heirs.'' It was held that ''then'' and ''or'' taken together show a clear intention to give the property to the children if they survived the life tenant, otherwise to the heirs of either non-survivor in the stead of the one deceased. It was also held that the surviving son was entitled to one half and that the remainder had passed directly by the will at the moment of the daughter's (other child) death to her heirs.

It follows from what we have said that the named daughters had, during the life of the life tenant, only contingent remainders. The vesting of the estates in interest, as well as in possession, depended upon their surviving the life tenant. As both Libbie and Hattie died before the termination of the life estate leaving heirs, it also follows that said daughters took no interest under the will which they could convey or encumber as against their heirs. The persons standing in relation of heirs to them took under the will as purchasers and not by descent the shares that the deceased daughters would have taken had they survived, unencumbered by the mortgages in question. To put it differently, the mortgagee took the mortgages subject to the contingency that Libbie and Hattie, as well as Nellie, would survive the life tenant. *Bowen* v. *Hackney, supra; Ebey* v. *Adams, supra; Taylor* v. *Taylor, supra; Whitesides* v. *Copper, supra.*

Inasmuch as the three defendants who have appeared and answered were heirs of Libbie and Hattie both at the time of the respective deaths of each and at the time of the death of the life tenant no question is involved as to the time of ascertainment of the heirs who are to take.

In some jurisdictions it seems where the word "or" when used in relation to "heirs" has been considered to have been so used in its substitutional sense it has been held that the first named remainderman after the particular estate takes a vested interest subject to divestment if he does not survive the life tenant. *Delaware County Tr. Co.* v. *Hanby, supra; In re Evan's Will, supra.* But if we should have considered that such were the case here, the result would not have been altered for by the deaths of Libbie and Hattie before that of the life tenant their interests would then have been divested and would thereupon have passed in substitution and under the will to their heirs unencumbered by the mortgages. See to this effect the cases cited in this paragraph and also *Bowen* v. *Hackney, supra; Boyd* v. *Sanders,* 141 Ga. 405, 81 S. E. 205; Tiffany Real Property (two vols. in one edition), page 286.

Charles C. Kinney, Jr., one of the named defendants, did not appear and answer. It appears without question, however, that his interests are identical with those of the defendants who did answer. Consequently he is entitled to the benefits accruing to the latter from our holdings in this case. *Roberts et al.* v. *Hughes Co. et al.,* 86 Vt. 76, 102, 107, 83 Atl. 807; *Kopper* v. *Dyer,* 59 Vt. 477, 489, 9 Atl. 4, 59 Am. Rep. 742.

Nellie, as has been seen, was living at the decease of the life tenant and consequently at such time her remainder, a one third interest in the premises, became vested in interest and possession. She as sister and heir of Hattie became at the same time entitled in possession to one half of Hattie's interest, the other half of the same going to the children of Libbie as the legal representatives of their deceased mother. Consequently it would appear from the record that at the time this petition was brought Nellie was the owner of a one-half undivided interest in the premises covered by the mortgages sought to be foreclosed. She did not appear and answer. We know of no defense that she might successfully interpose to this foreclosure action of the mortgages in question as against her interest in the property covered by the mortgages. It does not appear, however, that any motion *pro confesso* has been made against her and it might be difficult to draw a decree covering her undivided interest based on the petition as now worded. It seems best, therefore, to remand the

case for such further proceedings in the matter not inconsistent with the views herein expressed as the plaintiff may be advised to take.

*Decree reversed, petition dismissed as to the defendants Osmyn, Hilda, Mary and Charles, Jr., the first three named defendants to recover their costs, and cause remanded.*